UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED RENTALS (NORTH AMERICA), INC., <br><br> Plaintiff, <br><br> v. <br><br> AVCON CONSTRUCTORS, INC., d/b/a FRONTIER CONTRACTING, INC., et al., <br><br> Defendants. | CASE NO. 1:12-cv-01656 <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> (Document #41) |

## I.    INTRODUCTION

Defendants ALLEN ENGINEERING CONTRACTOR, INC. ("Allen"), SAFECO INSURANCE COMPANY OF AMERICA ("Safeco"), and AMERICAN CONTRACTORS INDEMNITY COMPANY ("ACIC") bring this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  This motion seeks summary judgment as to Plaintiff UNITED RENTALS (NORTH AMERICA), INC.'s ("United") first through sixth and eighth claims for relief.  The claims pertinent to this motion are as follows: 1) Claim on Miller Act Payment Bond against Allen and Safeco[1], 2) For Breach of Written Contracts against Allen, 3) For Services Rendered against Allen, 4) For Account Stated against Allen, 5) Open Book Account against Allen, 6) Quantum Meruit against Allen, and 8) Recovery on Contractor's License Bond against Allen and ACIC. For the following reasons, Defendants' motion will be DENIED.

---

[1] Claims one through six are also brought against Defendant AVCON CONSTRUCTORS, INC., d/b/a FRONTIER CONTRACTING, INC. ("Frontier").  Frontier has not filed a motion for summary judgment, nor has it joined in Allen, Safeco, and ACIC's motion.

## II.    BACKGROUND

This action arises from the alleged use and non-payment for the use of equipment owned by United and used by Allen and Frontier on a federal construction project, as described further, below.  The following facts are asserted:

> 1. The United States Department of Transportation, Federal Highway Administration [("DOT-FHA")] awarded Contract DTFH68-10-00033 . . . to [Allen] on June 22, 2010. [¶] 2. Allen is the prime contractor for the Kings River Bridge project [("Project")] administered by the [DOT-FHA]. [¶] 3. Allen secured the necessary bonds with [Safeco]. [¶] 15. The Project is a federal project requiring the removal and reconstruction of a bridge. [¶] 16. [Frontier] was a subcontractor of Allen's on the Project, hired to perform structural concrete and excavation. [¶] 17. Frontier began working on the Project on August 2010. [¶] 18. Beginning on October 8, 2010, [United] entered into various Rental Agreements to provide certain materials, equipment, fuels and services including, but not limited to trench boxes (collectively, "Rented Equipment") to the Project. [¶] 22. In June 2011, Allen terminated Frontier's involvement with the Project. [¶] 23. Allen used itself to perform Frontier's structural concrete and excavation duties on the Project. [¶] 24. Allen knew [United] had provided Rented Equipment to Frontier for the Project. [¶] 25. The Rented Equipment was left in use on the Project after Frontier was put off the job.[2] [¶] 29. [United] sent one of its drivers up to the Project several times to collect the Rented Equipment. [¶] 30. Allen informed [United] that Frontier was no longer on the Project. [¶] 31. But each time [United] attempted to retrieve the Rented Equipment, [United's] main driver on the project saw that the Rented Equipment was still in use on the Project – specifically being in use in the river, under water, for construction of the footing for the new bridge.[3] [¶] 32. Allen further informed [United] that the Rented Equipment was still needed and was necessary to the completion of the Project and [United], therefore, left the Rented Equipment at the Project for Allen's continued use.[4] [¶] 33. In approximately November 2011, Allen informed [United] that it was finished with the Rented Equipment and returned the Rented Equipment to [United] using Allen's own trucks and drivers.

Doc. 54-1 (Allen and ACIC's Separate Statement of Disputed and Undisputed Material Facts).  Further,

---

[2] Allen responds to this assertion by stating: "Frontier believed the equipment lost and unsalvageable and was claiming on insurance. [Allen] informed [United] that Frontier would be claiming on insurance." Doc. 54-1 at ¶ 25 (Moving Party's Response).  This does not dispute the fact offered by United.

[3] Allen objects to this fact on the grounds that it rented equipment from United separate from the Rented Equipment that is the subject of this action. Doc. 54-2 at ¶ 13. This does not dispute the fact asserted because the fact specifically refers only to the Rented Equipment which *is* the subject of this action.  The Court does not construe the term "Rented Equipment" to include the equipment rented separately by Allen.

[4] <u>See</u> footnote 3, <u>supra</u>.

> [¶] 19. The Rental Agreements were signed by employees for both Frontier and Allen.[5] [¶] 21. [United] issued written invoices (collectively, "Invoices") to reflect the specific items of Rented Equipment [United] had provided to the Project and to request payment for the same.[6] [¶] 26. Up to that time, Allen had issued various checks to [United] for some of [United's] equipment used on the Project.[7] [¶] 27. Allen was in possession of [United's] Invoices which explicitly demanded payment for the Rented Equipment.[8] [¶] 28. [United], however, did not receive any payment on the Invoices for the Rented Equipment being used at the Project. [¶] 34. At Allen's request, [United] sent Allen an accounting of the amounts due for the Rented Equipment.[9] [¶] 35. United Rentals received no objection from Allen to the amounts due listed in the emailed accounting and written statement.[10]

Doc. 54-1.  Finally,

> 11. Plaintiff sent a form Notice of Intent to File a Stop Notice or Bond Claim on March 13, 2012, addressing the Federal Highway Administration, Frontier, Allen and Safeco. [¶] 36. Allen, however, has not paid for the Rented Equipment at issue.[11] [¶] 37. [United] has also not received payment from Frontier for the Rented Equipment. [¶] 38. There still remains a balance due and owing to United Rentals from Frontier and Allen for the Rented Equipment in the amount of $166,973.29.[12]

Doc. 54-1.

### III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

---

[5] Allen disputes whether its employees had authority to enter into contracts on behalf of Allen, but does not appear to dispute the fact that its employees signed rental agreements with United. Doc. 54-1 at ¶ 19 (Moving Party's Response).

[6] Allen notes that the Invoices were addressed only to Frontier, but does not dispute the fact that the Invoices were issued. Doc. 54-1 at ¶ 21 (Moving Party's Response).

[7] Allen contends that "[a]ny checks were issued as joint checks, endorsed by both Frontier and [United]." Doc. 54-1 at ¶ 26 (Moving Party's Response).  This does not dispute that Allen issued checks concerning payment for equipment used on the Project.

[8] See footnote 6, supra.

[9] See footnote 2, supra.

[10] See footnote 2, supra.

[11] See footnote 7, supra; see footnote 2, supra.

[12] See footnote 6, supra.

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex, 477 U.S. at 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact. Henry v. Gill Industries, Inc., 983 F.2d 943, 949-50 (9th Cir. 1993). However, when the motion is unopposed, the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it. See Fed. R. Civ. P. 56(e)(2),(3).

## IV.  DISCUSSION

**A. First Claim for Relief – Claim on Miller Act Payment Bond**

"Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days . . . may bring a civil action on the payment bond for the amount unpaid." 40 U.S.C. § 3133(b)(1). "The Miller Act . . . requires a general contractor on a federal project to post a bond to protect those who supply labor or materials for the project . . . . The purpose of the Act is to protect persons supplying materials and labor for federal projects, and it is to be construed liberally in their favor to effectuate this purpose." U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 760-61 (9th Cir. 1984) (citing F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc., 417 U.S. 116, 124 (1974)). "Although the Miller Act is to be construed liberally, it is limited by a proviso that the payment bond protects only those persons who have a contractual agreement with a prime contractor or

subcontractor engaged in a federal project." U.S. for Use & Ben. of Conveyor Rental & Sales Co. v. Aetna Cas. & Sur. Co., 981 F.2d 448, 450 (9th Cir. 1992); accord Fidelity & Deposit Co. of Md. v. Harris, 360 F.2d 402, 408 (9th Cir. 1966) ("Recovery under the Miller Act is limited to those who have a direct contractual relationship, express or implied, with the prime contractor or a direct contractual relationship, express or implied, with a subcontractor of the prime contractor."); see Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co., 322 U.S. 102, 107-08 (1944). Further, a supplier that does not have a contractual relationship with a prime contractor must comply with the notice requirement set forth by statute. 40 U.S.C. § 3133; see Clifford F. MacEvoy Co., 322 U.S. at 107-08.

A valid Miller Act claim requires a plaintiff to prove: "(1) it supplied labor or materials in carrying out work provided for in a contract for which a payment bond [was] furnished under section 3131; (2) it has not been paid; and (3) it had a good faith belief that the labor or materials supplied were intended for the specific work." U.S. ex rel. Hajoca Corp. v. Aeroplate Corp., 2013 WL 3729692, *5 (E.D. Cal. 2013) (Findings and Recommendations adopted by 2013 WL 4500475); 40 U.S.C. § 3133(b)(1).

Allen and Safeco argue that summary judgment is proper as to the first claim for relief because United failed to satisfy the Miller Act's notice requirement. Doc. 41-1 at 4-6. United argues that it does not have to comply with the notice requirement because it has a direct contractual relationship with Allen. Doc. 50 at 10. United contends that sufficient evidence exists to find an express or implied contract with Allen. Doc. 50 at 10.

United is correct that it is not required to provide notice if it has a direct contractual relationship, either express or implied, with Allen. See 40 U.S.C. § 3133; see also Clifford F. MacEvoy Co., 322 U.S. at 107-08 (noting that the statutory notice is required for parties lacking a direct relationship with a prime contractor, but not for those parties with a direct contractual relationship with a prime contractor). The issue then becomes whether United and Allen had a contractual relationship, either express or implied. For the reasons set forth in the discussion below, the Court finds that sufficient evidence exists that a reasonable trier of fact could find the existence of a contract, which would obviate the Miller Act's notice requirement. See Part IV.B.,

infra.

As to the first claim for relief, Allen and Safeco have failed to carry their burden of showing that there is no genuine dispute as to any material fact. Summary judgment will be DENIED.

**B. Second Claim for Relief – For Breach of Written Contracts**

A claim for breach of contract under California law requires a plaintiff to prove: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting from the breach. McKell v. Washington Mut., Inc., 142 Cal.App.4th 1457, 1489 (2006); Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1059 (N.D. Cal. 2010); Petersen Bros., Inc. v. Phoenix Underground Const., Inc., 2012 WL 6020112, *2 (E.D. Cal. 2012) (Findings and Recommendations adopted by CM/ECF 1:12-cv-00936-AWI-SAB Doc. 16).

In California, contracts may be either express or implied. Cal. Civ. Code § 1619. "An express contract is one, the terms of which are stated in words." Cal. Civ. Code § 1620. "An implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621. To prove the existence of a contract under California law, a plaintiff must demonstrate: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. See Cal. Civ. Code § 1550. "An essential element of any contract is the consent of the parties, or mutual assent." Lopez v. Charles Schwab & Co., Inc., 118 Cal.App.4th 1224, 1230 (2004). An implied contract may be found based on the parties' conduct that demonstrates an intent to form a contract. Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal.App.3d 268, 275 (1977); Weitzenkorn v. Lesser, 40 Cal.2d 778, 794 (1953). Allen argues that there is no evidence of a contract, either express or implied, between United and Allen. Doc. 41-1 at 6-7.

At the summary judgment stage, it is Allen's burden to show that there are no triable issues of fact concerning the existence of a contract. See Celotex, 477 U.S. at 323; see Fed. R. Civ. P. 56(a). Moreover, the facts provided must be construed in United's favor. See Anderson, 477 U.S.

at 255.  With those standards in mind, the evidence is such that a reasonable trier of fact could find the existence of a contract, either express or implied.

### 1. Express Contract

#### a. Relationship Between the Parties

Allen contends that an express contract cannot be proven because the proffered evidence refers only to agreements between United and Frontier.  United argues that three rental agreements were signed by Allen's employees, which would allow a reasonable jury to draw the inference that there were express agreements between Allen and United for the use of the equipment. Doc. 50 at 7; Doc. 54-1 at ¶¶ 18-19; Doc. 50-8 at 3-5.  Allen notes that the rental agreements identified Frontier as the customer, not Allen. Doc. 54 at 4-5.

A trier of fact could reasonably find that an express contract between Allen and United exists concerning the Rented Equipment.  At least three rental agreements were signed by Allen employees. Doc. 54-1 at ¶¶ 18-19; Doc. 50-8 at 3-5.  Although Frontier was identified as the customer on the rental agreements, Allen used the equipment (after Frontier was removed from the Project) and made payments to United for the equipment. Doc. 54-1 at ¶¶ 25-26.  It would be reasonable for a jury to determine that Allen, through its employees that signed the rental agreements, intended to enter into contracts with United for the use of equipment for Allen's purposes.  This is bolstered by the fact that Allen continued to use the equipment even after the named customer – Frontier – was no longer on the job.

#### b. Employees' Capacity to Bind Allen in Contract

Allen further argues that the employees that signed the agreements were not authorized to bind Allen in contract with United. Doc. 54 at 4.  Authority to bind a principal may be actual or ostensible. Cal. Civ. Code §§ 2316-2317.  According to Allen, only its president had actual authority to bind the company. Doc. 54-2 at ¶ 3; see Doc. 54 at 4.  Allen also argues that United cannot prove that the employees had ostensible authority to bind Allen.  Allen quotes Associated Creditors' Agency v. Davis, 13 Cal.3d 374, 399 (1975) to provide the test for ostensible authority

7

1    – 1) the third party had a reasonable belief in the agent's authority, 2) the belief was due to some
2    act or neglect by the principal, and 3) the third party relying on the agent's authority was not
3    negligent. See Doc. 54 at 4.  Allen contends that United's belief in the Allen employees'
4    contracting authority is unreasonable and there is no evidence of any conduct by Allen to warrant
5    such belief in their authority. See Doc. 54 at 4-5.

6           A trier of fact could find that Allen employees had ostensible authority to bind Allen in
7    contract.  Allen's argument that it would be unreasonable for United to "believe that a truck driver
8    or operator of a cement mixer had authority" to make a contract solely because they are hourly
9    employees must be rejected. Doc. 54 at 4-5.  An employee using a company gas card no less binds
10   its employer in contract than what Allen's employees purportedly did here, even though the
11   employee is a driver or paid by the hour.  It is not unreasonable that a cement mixer would rent
12   equipment necessary for cement work at a construction project.  Moreover, while maintaining that
13   its employees could not bind Allen in contract, Allen asserts that those same employees *were* able
14   to bind Frontier in contract with United. Doc. 54 at 5.  It seems absurd to suggest that it is
15   unreasonable for United to believe that hourly employees and truck drivers could contract for their
16   employer (Allen) while those same employees were contracting for another entity (Frontier) on the
17   Project.

18           Further, the evidence is such that a trier of fact could find that Allen engaged in sufficient
19   conduct to cause United to believe that the employees were authorized to bind Allen in contract
20   for the equipment.  Allen knew the equipment was being used at the Project, made payments to
21   United for the equipment, and continued to use the equipment even after Frontier was removed.
22   Doc. 54-1 at ¶¶ 24-26.  A reasonable fact finder could determine that Allen was using the
23   equipment in such a way that suggests Allen authorized its employees to enter into agreements
24   directly with United so Allen could acquire the equipment.  The authority of the Allen employees
25   to enter into agreements with United on behalf of Allen is disputed.  There is sufficient evidence to
26   permit a jury to find that the employees were so authorized, making summary judgment improper.

27
28           **c.  Ratification**

Even if it was clear that the employees were not authorized to contract for Allen, there is sufficient evidence to permit a trier of fact to find that Allen ratified its employees' conduct. A principal may be bound by its agent even when the agent does not have such authority when the agent's conduct has been ratified by the principal. StreetScenes v. ITC Entertainment Group, Inc., 103 Cal.App.4th 233, 242 (2002). "A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof." Cal. Civ. Code § 2310. "Ratification is a question of fact." StreetScenes, 103 Cal.App.4th at 242. "'[R]atification may be proved by circumstantial as well as direct evidence,' and '[a]nything which convincingly shows the intention of the principal to adopt or approve the act in question is sufficient.'" Fredianelli v. Jenkins, 931 F. Supp. 2d 1001, 1019 (N.D. Cal. 2013) (quoting StreetScenes, 103 Cal.App.4th at 242).

Here, Allen was aware that the Rented Equipment was being used on the Project and continued to use it after Frontier was removed. Doc. 54-1 at ¶¶ 24-25. Allen then returned the equipment itself when it was finished. Doc. 54-1 at ¶ 33. The evidence shows that Allen received invoices for the Rented Equipment and made payments to United. Doc. 54-1 at ¶¶ 26-27. It would be reasonable for a trier of fact to conclude that Allen ratified its employees' conduct, i.e., signing the rental agreements, because it used the Rented Equipment as if Allen had entered into rental agreements directly with United. Allen had notice of the use of United's equipment on the Project and benefited from the employees' rental of the equipment by utilizing the equipment for the concrete work on the Project even after Frontier had been removed.

### d. Conclusion

Summary judgment is improper as to this claim because the existence of an express contract, the authority of Allen's employees to enter into a contract with United, and Allen's ratification of their conduct are all in dispute. There is sufficient evidence as to each of these issues to permit a trier of fact to reasonably find in United's favor.

### 2. Implied Contract

United also argues that an implied contract can be found based on Allen's conduct, specifically:

1    the rental agreements were signed by Allen employees (Doc. 54-1 at ¶¶ 18-19), Allen had
2    knowledge that the Rented Equipment was still in use at the Project after Frontier was removed
3    (Doc. 54-1 at ¶¶ 22-25), Allen made payments for the use of Rented Equipment on the Project
4    (Doc. 54-1 at ¶ 26), Allen informed United that the Rented Equipment was still needed at the
5    Project after Frontier was removed (Doc. 54-1 at ¶¶ 29-32), and Allen returned the Rented
6    Equipment to United using Allen's own trucks and drivers after Allen informed United that it was
7    done with the equipment (Doc. 54-1 at ¶ 33).  According to United, this evidence creates a triable
8    issue because Allen's conduct both before and after Frontier was removed from the Project could
9    permit a finding that it intended to enter a contract with United. Doc. 50 at 7-8.
10         Allen argues that the evidence provided fails to show any intent of the parties to make an
11   agreement as to the Rented Equipment because United had separate rental agreements with Allen
12   and the subject equipment was not part of those agreements. Doc. 54 at 5-6.  Moreover, Allen
13   contends that United's failure to substitute Allen for Frontier on the invoices for the equipment
14   shows that United never intended to form a new contract with Allen. Doc. 54 at 6.
15         "An implied contract 'consists of obligations arising from a mutual agreement and intent to
16   promise where the agreement and promise have not been expressed in words.'" California
17   Emergency Physicians Medical Group v. PacifiCare of California, 111 Cal.App.4th 1127, 1134
18   (2003) (quoting Silva v. Providence Hospital of Oakland, 14 Cal.2d 762, 773 (1939)); Varni Bros.
19   Corp. v. Wine World, Inc., 35 Cal.App.4th 880, 888 (1995)  "A course of conduct can show an
20   implied promise." PacifiCare, 111 Cal.App.4th at 1134; see Varni Bros., 35 Cal.App.4th at 889.
21         A trier of fact could reasonably find that an implied contract exists.  The evidence would
22   permit a finding of an implied contract because Allen knew United's Rented Equipment was being
23   used on the Project, Allen informed United that the equipment was necessary for completion of
24   the Project, and Allen continued to use it after Frontier was removed. Doc. 54-1 at ¶¶ 24-25, 31-
25   32.  Allen's conduct could be found by a jury to manifest intent to contract with United for the use
26   of the equipment.  A jury could find that Allen intended to step into the shoes of Frontier in
27   relation to the equipment Frontier rented from United because Allen continued to use United's
28   equipment after Frontier was removed.  In this regard, the fact that Allen had separate agreements

with United for other equipment is immaterial.

Further, United's failure to substitute Allen for Frontier on the invoices does not preclude a finding of intent to contract. That is but one piece of evidence for a jury to consider as to whether the parties' conduct created an implied contract.

As to the second claim for relief, Allen has failed to carry its burden. Summary judgment will be DENIED.

**C. Third Claim for Relief – For Services Rendered**

A "common counts" claim permits a plaintiff to seek recovery for the value of services rendered. "A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished." Fammilop v. Wells Fargo Bank, N.A., 2011 WL 61614, *4 (N.D. Cal. 2011) (quoting Kawasho Internat., U.S.A. Inc. v. Lakewood Pipe Service, Inc., 152 Cal.App.3d 785, 793 (1983)); 4 Witkin, Cal. Proc. (5th ed. 2008) Pleading, § 554, 682. "The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.' [Citation.]" Farmers Ins. Exchange v. Zerin, 53 Cal.App.4th 445, 460 (1997). The claim may be based on an express contract, a contract implied in fact, or a quasi-contract. Fammilop, 2011 WL 61614, *4 (citing Kawasho, 152 Cal.App.3d at 793); 4 Witkin, § 554 at 682. To recover, a plaintiff must 1) have acted "pursuant to either an express or implied request for services from the defendant" and 2) have rendered services that were "intended to and did benefit the defendant." Ochs v. PacifiCare of California, 115 Cal.App.4th 782, 794 (2004).

Allen argues against this claim on the same grounds as the second claim: lack of an express or implied contract. Doc. 41-1 at 6-7. The Court has already found that a trier of fact could reasonably conclude that either an express or implied contract exists. See Part IV.B., supra.

As to the third claim for relief, Allen has failed to carry its burden. Summary judgment will be DENIED.

**D. Fourth Claim for Relief – For Account Stated**

11

1  An account stated claim has three elements: "(1) previous transactions between the parties
2  establishing the relationship of debtor and creditor; (2) an agreement between the parties, express
3  or implied, on the amount due from the debtor to the creditor; and (3) a promise by the debtor,
4  express or implied, to pay the amount due." Petersen Bros., 2012 WL 6020112, *2 (quoting Zinn
5  v. Fred R. Bright Co., 271 Cal.App.2d 597, 600 (1969)); Hajoca Corp., 2013 WL 3729692, *4
6  (same). "In the usual situation, it comes about by the creditor rendering a statement of the account
7  to the debtor. If the debtor fails to object to the statement within a reasonable time, the law
8  implies his agreement that the account is correct as rendered." Petersen Bros., 2012 WL 6020112,
9  *2 (quoting Zinn, 271 Cal.App.2d at 600); Hajoca Corp., 2013 WL 3729692, *4 (same).

Allen again argues that this claim must fail due to lack of any contract. Doc. 41-1 at 6-7. Allen also argues that the use of joint-checks payable to both United and Frontier satisfies certain debts owed to United but does not create any agreement between United and Allen. Doc. 54 at 8.

United notes that "an account stated is itself an independent contract that is enforceable without regard to the underlying transactions on which it is based." Doc. 50 at 11 (quoting Eimco-BSP Services Co. v. Valley Inland Pacific Constructors, Inc., 626 F.2d 669, 671-672 (9th Cir. 1980). United argues that there were previous transactions arising from Allen's equipment rentals for the Project (Doc. 54-1 at ¶ 26), United issued a final billing statement at Allen's request (Doc. 54-1 at ¶ 34), and Allen did not dispute the amount (Doc. 54-1 at ¶ 35).

The possible existence of a contract, as discussed in Part IV.B., supra, along with Allen's prior payment of monies owed to United supports a reasonable inference that a debtor-creditor relationship exists. Further, Allen's request for and failure to timely object to the billing statement provided by United implies Allen's agreement to the accounting. A trier of fact could reasonably conclude that Allen agreed to pay the amounts expressed in the billing statement.

As to the fourth claim for relief, Allen has failed to carry its burden. Summary judgment will be DENIED.

**E. Fifth Claim for Relief – Open Book Account**

Under California law, a "book account" is defined as:

> a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

Cal. Code Civ. Proc. § 337a. A claim on an open book account is proper "whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished." Kawasho In't, U.S.A. v. Lakewood Pipe Svc., Inc., 152 Cal.App.3d 785, 793 (1983); Petersen Bros., 2012 WL 6020112, *3; Hajoca Corp., 2013 WL 3729692, *4.

Allen raises substantially the same arguments against this claim as those against the fourth claim for relief. That discussion provides that a trier of fact could reasonably find the existence of a contract and a debtor-creditor relationship between Allen and United. See Part IV.D., supra.

As to the fifth claim for relief, Allen has failed to carry its burden. Summary judgment will be DENIED.

**F. Sixth Claim for Relief – Quantum Meruit**

Under the doctrine of quantum meruit, "a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentiis Entm't Group Inc., 963 F.2d 1269, 1272 (9th Cir. 1992). Unjust enrichment results when the defendant receiving the benefits fails to provide compensation to the plaintiff. De Laurentiis, 963 F.2d at 1272; Petersen Bros., 2012 WL 6020112, *2. "To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." Ochs, 115 Cal.App.4th at 794.

Allen argues that there was no request for the equipment because United contracted

directly with Frontier. Doc. 41-1 at 7. A reasonable trier of fact could conclude that an express or implied contract exists. See Part IV.B., supra. A contract would necessarily require a request by Allen, express or implied, for use of the equipment. Accordingly, although a trier of fact may ultimately determine that no contract exists, there is sufficient evidence to find the requisite request for services to support a quantum meruit claim.

Further, Allen told United that the equipment was still needed and continued to use the equipment after Frontier was removed from the Project. Doc. 54-1 at ¶ 32. Construed in the light most favorable to United, this fact is sufficient for a jury to reasonably conclude that Allen requested the use of the equipment, either expressly by stating that the equipment was still needed, or implicitly by continuing to use it.

As to the sixth claim for relief, Allen has failed to carry its burden. Summary judgment will be DENIED.

**G. Eighth Claim for Relief – Recovery on Contractor's License Bond**

In California, contractors are required to carry a surety bond "to protect persons damaged by a contractor's wilful (sic) and deliberate violation of certain disciplinary sections of the Business and Professions Code." Nelson Supply Co. v. Sur. Co. of Pac., 161 Cal.App.3d 490, 491 (1984); Cal. Bus. & Prof. Code § 7071.5(c). The complaint alleges that United was damaged when Allen "diverted funds received for the completion of [the Project] and/or failed substantially to account for use of such funds" in violation of Business and Professions Code section 7108[13] and when Allen "failed to pay for the materials furnished by [United]" in violation of Business and Professions Code Section 7120.[14] Doc. 1, ¶ 50.

Allen and ACIC argue that there was no willful or deliberate withholding of funds or

---

[13] "Diversion of funds or property received for prosecution or completion of a specific construction project or operation . . . or failure substantially to account for the application or use of such funds or property on the construction project or operation for which such funds or property were received constitutes a cause for disciplinary action." Cal. Bus. & Prof. Code § 7108.

[14] "Wilful (sic) or deliberate failure by any licensee . . . to pay any moneys, when due for any materials or services rendered . . . when he has the capacity to pay or when he has received sufficient funds therefor as payment for the particular construction work, project, or operation for which the services or materials were rendered . . . constitutes a cause for disciplinary action." Cal. Bus. & Prof. Code § 7120.

failure to pay as required by Section 7071.5 because Allen believed Frontier was responsible for payment. Doc. 41-1 at 8. Allen and ACIC further provide that there is evidence of a good faith dispute as to whether money was owed, which would preclude a finding of willful or deliberate diversion or failure to pay. Doc. 41-1 at 9.

United claims that Allen has not paid for the equipment used (Doc. 54-1 at ¶ 36), Allen at some point had the capacity to pay (Doc. 54-1 at ¶ 26), and Allen has failed to provide any evidence that it is unable to pay United for the use of its equipment. Doc. 50 at 13.

The facts offered by United show that Allen has not paid United for the use of the equipment. A contract could reasonably be found to exist. See Part IV.B., supra. A jury could reasonably find an obligation to pay and a willful or deliberate failure to do so on Allen's part. Allen and ACIC's proffered evidence of a good faith dispute as to whether money was owed does not remove the issue from genuine dispute. A reasonable trier of fact could find either a willful failure to pay or a good faith dispute concerning Allen's obligation to United. Accordingly, a finding for Allen and ACIC cannot be made at the summary judgment stage.

As to the eighth claim for relief, Allen and ACIC have failed to carry their burden. Summary judgment will be DENIED.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:  March 25, 2014                                    _____
                                                         SENIOR DISTRICT JUDGE

15